In re Robert David NORMAN, d/b/a Ferguson Drug Company, Debtor.

Sharon L. NORMAN, Plaintiff,

v.

Robert David NORMAN, Defendant.

Bankruptcy No. 80–03805–S–13.
Adv. No. 81–0097–S–13.

United States Bankruptcy Court,
W. D. Missouri, S. D.

July 13, 1981.

Gary A. Love, Springfield, Mo., for debtor/defendant.

Donald E. Bonacker, Springfield, Mo., for plaintiff.

## MEMORANDUM OPINION AND ORDER

JOEL PELOFSKY, Bankruptcy Judge.

Debtor has filed a Chapter 13 proceeding, scheduling his former wife as a creditor holding a disputed debt. The issue, raised in an adversary proceeding, is whether the award made to her by the Circuit Court of Webster County, Missouri, in a proceeding for dissolution of marriage is a dischargeable debt. An evidentiary hearing was held. Creditor now proposes to offer the testimony of the Circuit Court Judge who rendered the judgment for the purpose of "determining whether or not the award entered was for support and based on need in whole or in part, and, if in part, the extent to which they were for support." Debtor objects to such testimony being received.

The dissolution action was tried before the trial court. The trial judge made extensive findings and wrote a very detailed decree, which awarded the wife, "inter alia", "in lieu of her interest in other property . . . the sum of $73,500.00." An award of child support was also made. There was no express award of maintenance. The correctness of the division of property was raised on appeal as was the adequacy of the child support award. No question of the trial court's apparent failure to award maintenance was raised on appeal. The Court of Appeals concluded that the particular disproportionate "division of marital property" was not an abuse of discretion. *Norman v. Norman*, 604 S.W.2d 680–685 (Mo.App.1980).

In those portions of the decree and order which set out the Court's division of property, the Judge stated:

"The Court further finds that petitioner is a long time resident of the Ava Community and intends to continue living there, that the Ferguson Drug Company is of much more value to him that to respondent as he is qualified to operate that business and respondent is not, that the home in Ava is of more value to petitioner since he intends to reside in Ava, while respondent intents to live elsewhere; that respondent would not be able to maintain said home and pay the

mortgage payments even if said property was set off to her.

The Court further finds that a fair and equitable division of the property cannot be made in kind because of the unique nature of the property, the high cost of upkeep and debt payments, the limited earning ability of respondent and the location of the parties future residence. The Court further finds that an equal division of the marital property would not be fair to respondent, in view of the earning capacity of each party, the time the respondent must devote to the care of the children; the amount of non-marital property owned by petitioner and the style of living in which the parties are accustomed to living."

Debtor now contends that the decree sets out a property settlement and that the obligation is dischargeable. Creditor argues that this is an award for the maintenance of the wife and wants the Judge to testify as to what the decree really means. Section 1328(a)(2) provides that debts specified in Section 523(a)(5) are not dischargeable in a Chapter 13 proceeding. Section 523(a)(5) denies discharge from any debt

"to a spouse ... of the debtor for alimony to, maintenance for, or support of both spouse or child in connection with a ... divorce decree ... but not to the extent that—

(B) such debt includes a liability designated as alimony, maintenance or support, unless such liability is actually in the nature of alimony, maintenance, or support ..."

In the 1970 amendments to the Bankruptcy Act, the jurisdiction of the Bankruptcy Court was enlarged to enable it to hear complaints as to dischargeability. Section 17(c) of the Act, Section 35, Title 11, U.S.C.; 1A Collier on Bankruptcy, Section 17.01[3.3] (14th Ed.). Interestingly enough, with certain exceptions, the grant of jurisdiction is not exclusive. "A creditor who contends that his debt is not discharged under clause (2), (4), or (8) of subdivision a of this section must file an application for a determination of dischargeability ... and, unless, an application is timely filed, the debt shall be discharged. Section 17(c)(2). Section 17(a)(7) dealt with debts for alimony, maintenance or support and was not the subject of a mandatory application under Section 17(c).

This concept of concurrent jurisdiction is carried over into the Bankruptcy Code, Section 523(c), Title 11, U.S.C.; Rule 409, Rules of Bankruptcy Procedure, despite the grant of jurisdiction contained in Section 1471, Title 28, U.S.C. and the general concept that all issues affecting the bankrupt can be resolved in the bankruptcy court. Even though concurrent jurisdiction exists, the legislative history of the Code makes it clear that the issue of dischargeability is a matter of bankruptcy law.

"Paragraph (5) ... will apply to make nondischargeable only alimony, maintenance, or support owed directly to a spouse or dependent ... What constitutes alimony, maintenance or support, will be determined under the bankruptcy laws, not State law. Thus, cases such as *In re Waller*, 494 F.2d 447 (6th Cir. 1974) ... are overruled ..." House Report No. 95–595, 95th Cong. 1st Sess. (1977) 364, U.S.Code Cong. & Admin.News 1978, 5787, reprinted in 2 App. Collier on Bankruptcy (15th Ed.).

In *Waller*, the Court held that Ohio law determined what constituted alimony, maintenance or support, 494 F.2d at 448, and it is that declaration which is rejected in the legislative history to Section 523. But the rejection is tempered by the existence of concurrent jurisdiction by the fact that there is no bankruptcy law of domestic relations and by principles of comity which require this Court to give due consideration to the decision of the State trial judge. *In re Pelikant*, 5 B.R. 404 (Bkrtcy.N.D.Ill. 1980); *In re Lineberry*, 9 B.R. 700 (Bkrtcy. W.D.Mo.1981); *In re Fox*, 5 B.R. 317, 6 BCD 709 (Bkrtcy.N.D.Tex.1980).

While the language of the legislative history suggests that decisions of other trial courts must be reviewed to resolve issues of dischargeability, the review is not intended to reopen the litigation in all aspects. The law favors finality.

"Private right and public welfare unite in demanding that a question once adjudicated by a court of competent jurisdiction shall, except in direct proceedings to review, be considered as finally settled and conclusive upon the parties ... But in order to make this finality rightful it should appear that the question was distinctly put in issue; that the parties presented their evidence, or at least had an opportunity to present it, and that the question was decided."

*Fayerweather v. Ritch*, 195 U.S. 276, 299, 25 S.Ct. 58, 64, 49 L.Ed. 193 (1904).

In the *Fayerweather* case, which raised issues of due process arising out of a will contest, the Supreme Court concluded that the state trial court had necessarily ruled an issue even though no specific finding had been made. The trial judge had testified in subsequent proceedings as to his considerations at the time of the original judgment.

"... the testimony of the trial judge, given six years after the case had been disposed of, in respect to the matters he considered and passed upon, was obviously incompetent ... no testimony should be received except of open and tangible facts—matters which are susceptible of evidence on both sides. A judgment is a solemn record. Parties have a right to rely upon it. It should not lightly be disturbed, and ought never to be overthrown or limited by the oral testimony of a judge or juror of what he had in mind at the time of the decision." *Fayerweather*, supra at 307–308, at 67–68.

In a similar situation, the Supreme Court has held that "the mental processes of the Secretary" of Agriculture cannot be probed to determine the validity of regulations which he has propounded. The Secretary, the Court concluded, performed in a process "resembling that of a judicial proceeding" and should not be called as a witness to explain his conclusions. *U. S. v. Morgan*, 313 U.S. 409, 422, 61 S.Ct. 999, 1004, 85 L.Ed. 1429. See also *U. S. v. Armour & Co.*, 402 U.S. 673, 681–82, 91 S.Ct. 1752, 1757, 29 L.Ed.2d 256 (1971) where the Supreme Court, dealing with a consent decree, stated:

"Thus, the *decree* itself cannot be said to have a purpose, rather the *parties* have purposes generally opposed to each other, and the resultant decree embodies as much of those opposing purposes as the respective parties have the bargaining power and skill to achieve. For these reasons, the scope of the consent decree must be discerned within its four corners and not by reference to what might satisfy the purposes of one of the parties to it."

Where the record provides support for the trial court's decision, "an examination into the mental processes of the judge will not be allowed." *U. S. v. Dowdy*, 440 F.Supp. 894, 896 (W.D.Va.1977). See also *South Terminal Corp. v. EPA*, 504 F.2d 646, 675 (1st Cir. 1974) and compare *SEC v. Bartlett*, 422 F.2d 475 (8th Cir. 1970).

Here the domestic relations case was tried by able counsel, the issues of maintenance and division of property were presented and decided and the decision of the trial court affirmed on appeal. In light of the legislative history of Section 523, the conclusions of the State trial court are not controlling on the issue of dischargeability, and that judge therefore should not be asked to second guess his decision. The motion to offer the testimony of the trial judge is DENIED.

This Order constitutes Findings of Fact and Conclusions of Law pursuant to the requirements of Rule 752, Bankruptcy Rules.

SO ORDERED this 13th day of July, 1981.