In re Leo Dane BUSICK, Debtor.

Thomas E. Schroeder, Anita
Schroeder, Plaintiffs,

v.

Leo Dane Busick, Defendant.

Bankruptcy No. 99–11551.
Adversary No. 00–1021.

United States Bankruptcy Court,
N.D. Indiana,
Fort Wayne Division.

April 17, 2001.

Wesley N. Steury, Fort Wayne, IN, for plaintiff.

Steven J. Ouellette, Fort Wayne, IN, for defendant.

## DECISION

ROBERT E GRANT, Bankruptcy Judge.

Prior to the debtor's petition for relief under Chapter 7 of the United States Bankruptcy Code, the plaintiffs sued him in the Steuben Superior Court. Defendant appeared and, following a trial on the merits, the court entered judgment against him. The court found the defendant liable to the plaintiffs under three theories of recovery: 1) breach of contract; 2) negligence; and 3) fraud and home improvement fraud. Judgment was entered against the defendant in the total sum of $96,999.93, of which $3,000.00 represented costs recoverable under I.C. 34–24–3–1 as a result of home improvement fraud. *See,* I.C. 35–43–6–12. The defendant subsequently filed a petition for relief under Chapter 7 of the United States Bankruptcy Code, whereupon plaintiffs initiated this adversary proceeding in order to determine the dischargeability of the judgment debt. Plaintiffs contend that the obligation is excepted from the scope of debtor's discharge pursuant to § 523(a)(2)(A) of the United States Bankruptcy Code, as a debt obtained by "false pretenses, a false representation, or actual fraud...."

The matter is presently before the court on plaintiffs' motion for summary judgment. Plaintiffs contend that the factual findings contained in the Steuben Superior Court's judgment of August 13, 1998 preclude the debtor from challenging the fraudulent origin of his obligation to them. In response, the defendant advances three arguments. He contends that the state court's findings are not sufficient to establish all of the elements a plaintiff is required to prove under § 523(a)(2)(A) and that the findings with regard to fraud and home improvement fraud were not necessary to the court's decision. In the alternative, he contends that, if the prior judgment operates as an estoppel, only the incremental damages associated with the home improvement fraud—$3,000.00—and not the damages recoverable under the alternative theories of recovery, would be excepted from discharge. In addition to these legal arguments, defendant has filed an affidavit controverting the state court's findings.

■ Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Bankr.P.Rule 7056(c); Fed.R.Civ.P.Rule 56(c). Thus, summary judgment is essentially an inquiry as to "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).

Initially, Rule 56 requires the moving party to inform the court of the basis of the motion and to identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The non-moving party may oppose the motion with any of the evidentiary materials listed in Rule 56(c), but reliance on the pleadings alone is not sufficient to withstand summary judgment. *Posey v. Skyline Corp.,* 702 F.2d 102, 105 (7th Cir.1983). In ruling on a summary judgment motion, the court accepts as true the non-moving party's evidence, draws all inferences in favor of the non-moving party, and does not weigh the evidence and credibility of the witnesses. *Anderson,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

█ If the defendant may permissibly controvert the facts found by the Steuben Superior Court, he has created a genuine issue of material fact which would preclude the entry of summary judgment against him. Nonetheless, the whole purpose of the doctrine of collateral estoppel is to prevent the re-litigation of a factual issue once it has been properly determined by a court of competent jurisdiction. *See, Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326, 99 S.Ct. 654, 659, 58 L.Ed.2d 552 (1979). Consequently, despite the defendant's attempt to controvert the factual findings of the Steuben Superior Court, the true issue upon which plaintiffs' motion turns is whether that decision operates as an estoppel and, if so, is it sufficient to prove plaintiffs' case under § 523(a)(2)(A).

█ "[C]ollateral estoppel operates to bar a subsequent relitigation of the same fact or issue where that fact or issue was necessarily adjudicated in a former suit and the same fact or issue is presented in [a] subsequent lawsuit." *In re Staggs,* 178 B.R. 767, 774 (Bankr.N.D.Ind.1994), *aff'd,* 177 B.R. 92 (N.D.Ind.1995). Generally, whether or not a particular judgment will have this preclusive effect is determined by state law. *In re Scarborough,* 171 F.3d 638, 641 (8th Cir.1999), *cert. denied,* 528 U.S. 931, 120 S.Ct. 330, 145 L.Ed.2d 258 (1999); *Bicknell v. Stanley (In re Bicknell),* 118 B.R. 652, 659–60 (S.D.Ind.1990); *Staggs,* 178 B.R. at 773. In Indiana, this requires plaintiff to demonstrate:

1) that the issue in the current action is identical to that in the first action;

2) that the issue was actually litigated;

3) that the resolution or determination of the issue was necessary to the judgment in the first action; and

4) that a final judgment determined or resolved the issue in the prior action. *Staggs,* 178 B.R. at 774.

As the party asserting preclusion, the plaintiff is expected to identify the specific facts that were determined in the previous litigation and then to demonstrate how those facts compel a particular result in the subsequent action. *See, Reid v. State,* 719 N.E.2d 451, 456 (Ind.App.1999); *Bicknell,* 118 B.R. at 664.

There is no dispute that the issues between plaintiffs and defendant were actually litigated in the state court or that the litigation has been resolved by a final judgment. Furthermore, there is no real dispute that there is an identity of issues—in other words that some of the issues determined by the state court are identical to the questions this court must answer in determining dischargeability under § 523(a)(2)(A).[1] Instead, the dispute in

---

1. In saying this, the court recognizes that

defendant argues the state court findings are

this case turns on the third element of collateral estoppel, which is whether the state court's findings concerning fraud were necessary to its resulting judgment.

■■■■ Not every finding of fact that a court makes in connection with ruling on a particular dispute is necessary to its ultimate conclusion and it is only the facts which are necessary to that conclusion that cannot be controverted. *See, Connecticut Indem. Co., v. Bowman,* 652 N.E.2d 880, 883 (Ind.App.1995); *State Farm Mut. Auto. Ins. Co. v. Glasgow,* 478 N.E.2d 918, 925 (Ind.App.1985). Extraneous factual findings may be re-litigated. To determine whether a particular finding was necessary to the prior court's decision, one must ask whether that decision would have been any different without that finding. An excellent example of an extraneous finding, and one which this court often sees, occurs in a suit where the plaintiff's claim is based upon a promissory note. In addition to finding liability on the note, the court also makes an additional finding that the defendant induced the plaintiff to make the loan because of a false financial statement, and then enters judgment for the amount due under the note. The finding concerning a false financial statement is totally gratuitous and has absolutely nothing to do with defendant's liability under the note. The resulting judgment would be the same with or without that finding.

■■■■ That this type of gratuitously unnecessary finding will not operate as an estoppel is usually quite obvious, as are the motivations of the attorneys who submit such surplus findings to state courts in connection with pre-petition litigation. Less obvious, however, are the factual findings which are made in connection with litigation that proceeds on separate theories of recovery, any one of which would have produced the resulting liability. In this situation, it is only the factual findings which are common to all the theories of recovery which will operate as an estoppel. *See, Connecticut Indemnity Co. v. Bowman,* 652 N.E.2d 880, 883 (Ind.App.1995) (where the judgment, which might have been based upon one of several grounds does not show the ground upon which it is based, collateral estoppel will not apply); *Angstrohm Precision, Inc. v. Vishay Intertechnology, Inc.,* 567 F.Supp. 537, 541 (E.D.N.Y.1982); *Restatement (Second) of Judgments* § 27, cmt. i (1982). In these situations, none of the facts which are unique to the separate theories of recovery are necessary to the court's judgment for, in their absence, the judgment holder would still have prevailed on one of its other theories. Therefore, collateral estoppel will not apply to those facts. *See, Jennings v. State,* 714 N.E.2d 730, 733 (Ind.App.1999) ("[i]f the fact-finder could have based its decision on another factor, then collateral estoppel does not bar relitigation.").

■■■■ The defendant argues that the state court's findings were not necessary to its ultimate judgment because plaintiff successfully proceeded on three separate theories of recovery: first, the breach of a home improvement contract between plaintiffs and defendant; second, defendant's negligence for the failure to exercise reasonable care, not following building codes or obtaining necessary permits; and finally for defendant's fraud and home improvement fraud. After making these

---

not sufficient to compel a decision in plaintiffs' favor. That issue—whether the state court's findings are sufficient to compel a particular conclusion—is not the same as whether the findings on particular issues are identical. Instead, that argument presents a question not of identity, but rather, of sufficiency and whether any findings on a particular point were made.

findings concerning liability, the court proceeded to award damages totaling $96,999.93.[2] Given the multiple theories of recovery, it seems that the judgment would basically have been the same whether plaintiffs succeeded under all or only one of their breach of contract, negligence, or common law fraud theories of recovery. Because of this, the findings associated with fraud—which are the important ones to this proceeding—would not have been necessary to the judgment. The state court did not, however, just stop with these particular findings. It also went on to find that defendant committed "home improvement fraud." As a result, I.C. 34–24–3–1 allowed the plaintiffs to recover attorney fees and expenses which would not have been recoverable under the breach of contract, negligence, or common law fraud theories. Consequently, the court concludes that the state court's finding that the defendant's acts constituted home improvement fraud was necessary to its judgment; without that finding, the court's judgment would have been different.

The mere fact that the state court's finding concerning home improvement fraud was necessary to its judgment does not automatically result in the conclusion that defendant's obligation to the plaintiffs is nondischargeable under § 523(a)(2)(A). The plaintiffs are still required to prove— and this court is required to find—that the state court's findings of fact are sufficient to demonstrate each of the different elements plaintiff must prove in order to succeed under that section of the Bankruptcy Code. This requires us to compare the state court's findings with the facts a

plaintiff is required to prove under § 523(a)(2)(A) in order to determine whether all of those elements have been demonstrated.

■■■■ Section 523(a)(2)(A) excepts from discharge debts which arise out of false pretenses, false representations, or actual fraud. Whether or not a debtor's actions constitute this type of prohibited conduct is a question of federal law. In order to prevail on a claim of nondischargeability under § 523(a)(2)(A), a plaintiff has historically proved three things:

(1) that the debt arose out of representations which the debtor either knew to be false or which were made with such reckless disregard for the truth as to constitute willful misrepresentation;

(2) that the debtor made these representations with the intent to deceive; and,

(3) that the creditor reasonably relied on the debtor's false representation. *See, In re Mayer*, 51 F.3d 670, 673 (7th Cir.1995).

Although *Mayer* required the plaintiff to demonstrate reasonable reliance, the Supreme Court has since determined that a creditor's reliance need only be justifiable. *See, Field v. Mans*, 516 U.S. 59, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995). More recently, the Seventh Circuit has recognized that in some circumstances a looser standard may satisfy 523(a)(2)(A); proof of a misrepresentation or reliance is not always necessary. *See, McClellan v. Cantrell*, 217 F.3d 890 (7th Cir.2000). Nevertheless, it is clear that conduct satisfying *Mayer* would also satisfy *McClellan*'s less strin-

**2.** In their individual components the damages were: $78,549.70 because of the expenses plaintiffs incurred to remove and replace the defendant's faulty work; $15,450.23 due to the defendant's negligence in performing work under the contract and failure to pay

subcontractors or provide certain materials; and $3,000.00 in attorney fees and witness fees due to the defendant's commission of the crime known as "home improvement fraud." *See*, I.C. 35–43–6–12.

gent formulation. Consequently, the court examines plaintiff's complaint under *Mayer*'s more rigorous standard, as modified by the Supreme Court's requirement that reliance need only be justifiable, rather than reasonable.

 Unfortunately, when a court is required to consider whether another court's prior decision operates as an estoppel it is not always neatly presented with crisp, clean, specific and separately numbered findings of fact. Instead, it may have nothing more than an ultimate conclusion which indicates that the plaintiff has prevailed under a particular theory. State courts are not necessarily required to make particular findings of fact and conclusions of law. *Compare* Ind. Trial Rule 52(a) *with* Fed.R.Civ.P.Rule 52. Furthermore, neither are juries. A judgment based upon a jury verdict may be general, reflecting nothing more than the ultimate result of who won and how much. This lack of specific factual findings, whether from the court or a jury, will not prevent such a decision from operating as an estoppel. In these circumstances, it may be necessary to look somewhat beyond the literal wording of the court's judgment in order to determine what facts a plaintiff necessarily had to prove to allow the finder of fact to come to its conclusion. *See, In re Hoult,* 243 B.R. 818, 823 (Bankr. M.D.Fla.1999) (issue may be actually decided for collateral estoppel purposes even if it is not explicitly decided where it constitutes, logically or practically, a necessary component of the decision reached). Particularly in a general jury verdict situation, this may require the court to be informed with regard to the precise issues which were submitted to trial and the instructions the jury was given. *See, e.g., In re Whitley,* 130 B.R. 105, 107 (Bkrtcy. S.D.Ala.1990); *In re Stover,* 88 B.R. 479, 481 (Bankr.S.D.Ga.1988) (reviewing certified transcripts and jury instructions in prior litigation). In other situations, however, the subsequent court may be required to determine what the first court meant when it used a particular term of art or what the plaintiff otherwise had to prove in order to persuade the prior court to attach a particular label to particular conduct. This is often necessary not just because of the vagaries of state court findings, but also, because there is not necessarily a precise correspondence between a state law cause of action and the different elements a creditor might need to prove under § 523(a) with regard to dischargeability. For example, a state court might determine that a defendant's conduct constituted "criminal conversion" or "assault and battery" and then proceed to enter judgment. In the subsequent dischargeability litigation, the bankruptcy court will be called upon to examine this ultimate finding in light of the particular elements which had to be proved to generate it, and then determine whether those elements corresponded with the proof required by a particular portion of § 523(a). *See, e.g., In re Callender,* 212 B.R. 276, 281 (Bankr. W.D.Mich.1997); *In re Staggs,* 178 B.R. at 774; *In re Whitley,* 130 B.R. at 107. That is the situation the court faces in the present case.

 The Steuben Superior Court's finding—that the defendant was guilty of "home improvement fraud"—was necessary to its judgment. In order to determine whether this finding is sufficient to satisfy plaintiffs' burden under § 523(a)(2), the court must examine the elements of the crime of home improvement fraud and determine whether the acts it condemns are the same type of fraud, false pretenses or false representations condemned by § 523(a)(2)(A). Home improvement fraud is committed when a person who engages in or solicits an oral or written contract to alter, repair or modify residential property

for a price in excess of $150.00, *see* I.C. 35–43–6–6, 4, 3, enters into such a contract and knowingly:

1) misrepresents a material fact relating to the terms of the home improvement contract or the preexisting or existing condition of any part of the property involved;

2) creates or confirms a consumer's impression that is false and that the home improvement supplier does not believe to be true;

3) promises performance that the home improvement supplier does not intend to perform or knows will not be performed;

4) uses or employs any deception, false pretense, or false promise to cause a consumer to enter into a home improvement contract;

5) enters into an unconscionable home improvement contract . . . ; or

6) fails to comply with the provisions of I.C. 23–15–1 relating to the use of an assumed name in the conduct or transaction of business in Indiana and misrepresents or conceals either the home improvement supplier's real name, business name, or business address . . .

(b)(1) damages the property of a consumer;

(2) does work on the property of a consumer without the consumer's prior authorization;

(3) misrepresents that the supplier or another person is an employee or agent of the federal government, the state, a political subdivision of the state, or any other governmental agency or entity; or

(4) misrepresents that the supplier or another person is an employee or agent of any public or private utility . . . . I.C. 35–43–6–12(a)(1–6), (b)(1–4).

With few exceptions, all of the actions Indiana condemns as home improvement fraud involve some type of misrepresentation or deception. The only exceptions are at paragraph (a)(5) concerning an unconscionable contract and paragraphs (b)(1) & (2), concerning damage to the property of a consumer or unauthorized work. Admittedly, the state court did not specify which particular type of home improvement fraud the debtor was guilty of. Nonetheless, its finding of fraud—"for representing to plaintiffs that he was licensed when he was not, thereby inducing their reliance upon him and awarding him a home construction contract"—in the sentence immediately proceeding its finding concerning home improvement fraud, dispels any notion that the court's conclusion might have been premised upon a part of the statute that does not involve misrepresentation or deceit. Indeed, plaintiff argues that the home improvement fraud found by the Steuben Superior Court was that described at paragraph (a)(4)—"knowingly . . . uses or employs any deception, false pretense, or false promise to cause a consumer to enter into a home improvement contract" I.C. 35–43–6–12(a)(4)—and there is no suggestion or argument that the state court's decision was based upon any of the three aspects of the statute that do not constitute misrepresentation or deception. This is sufficient to satisfy the demands of § 523(a)(2)(A) to the extent it requires the debtor to make false representations, knowing that it does so, upon which the creditor justifiably relies. Furthermore, the fact that debtor *knowingly* used a deception, false pretense or false promise also leads to the conclusion that the debtor acted with the intent to deceive when he did so; for the court can conceive of no other purpose for a knowing falsehood. Finally, the fact that there is an obligation owing by the debtor to the plaintiffs which is based upon this conduct satisfies the final requirement of a loss or damage as a result of the debtor's misrepresentation. Alternatively, even if the ele-

ments of home improvement fraud can not be readily equated with all of the traditional elements of common law fraud, the statute's condemnation of knowing misrepresentation, deception, false impression and knowingly false promises would seem to satisfy *McClellan*'s holding that § 523(a)(2)(A) condemns *any type* of active fraud and is not limited to the type of fraud which requires misrepresentation or reliance. *See, McClellan v. Cantrell,* 217 F.3d 890 (7th Cir.2000).

 The defendant's final argument is an alternative one. He contends that even if the state court's judgment does operate as an estoppel, § 523(a)(2)(A) would only except from the scope of discharge the $3,000.00 in attorney and witness fees which were recoverable as a result of home improvement fraud and the remaining amount of the judgment—$93,999.93—should be dischargeable. This argument has been rejected. *See, Cohen v. de la Cruz,* 523 U.S. 213, 218, 118 S.Ct. 1212, 1217, 140 L.Ed.2d 341 (1998) (any debt arising from the debtor's fraud is excepted from discharge); *Matter of McFarland,* 84 F.3d 943 (7th Cir.1996) (the entire amount of an obligation tainted by fraud is excepted from discharge, not just the additional money extended in reliance upon the debtor's fraud).

The findings of fact contained in plaintiffs' judgment against the defendant collaterally estop the debtor from re-litigating those findings. Furthermore, those findings are sufficient to satisfy plaintiff's burden of proving that the obligation represented by the judgment is a debt obtained by the false pretenses, false representations or actual fraud condemned by § 523(a)(2)(A) of the United States Bankruptcy Code. Accordingly, there is no genuine issue of material fact and plaintiffs are entitled to the entry of judgment in their favor as a matter of law. The defen-

dant's obligation to the plaintiffs, represented by the judgment of the Steuben Superior Court dated August 13, 1998 in *Schroeder v. Busick,* Case No. D–9801–CP–022, is a nondischargeable debt.

Judgment will be entered accordingly.